United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HAROLD SHEEHY, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> SANTA CLARA VALLEY ) <br> TRANSPORTATION AUTHORITY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 5:14-cv-01325-PSG <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> **(Re: Docket No. 29)** |

In this lawsuit alleging violation of the Fair Labor and Standards Act, Defendant Santa Clara Valley Transportation Authority moves for summary judgment, asserting that there is no genuine issue of material fact in this case appropriate for determination by a jury. Because the court agrees, VTA's motion is GRANTED.

**I.**

The FLSA generally requires overtime pay at one and a half times the regular rate for all hours after 40 in a week.[1] In order to earn compensable overtime, "[f]irst, each activity must constitute work. That is, it must be undertaken for the benefit of the employer and controlled or required by the employer . . . Second, Plaintiff[] must have been employed (suffered or permitted)

---

[1] *See* 29 U.S.C. § 207(a)(2).

1

Case No. 5:14-01325-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

to do the work, and the employer knew or should have known they were working. Finally the hours of work performed must be actually, rather than theoretically, compensable."[2] Expressed another way, "work or employment as those words are commonly used means physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."[3]

Sheehy is a light rail train operator, employed by VTA for over two decades.[4] For several years leading up to 2013, he operated "Train 10" back and forth on the Alum Rock-Santa Teresa line.[5] One of Sheehy's duties was to "pull-in" the train (i.e., bring the train back to the storage yard after each shift).[6] For years, Sheehy was allotted 46 minutes to complete his pull-in. But reports generated by electronic sensors along the train tracks showed that Sheehy consistently pulled in early.[7] And so, in July 2010, VTA adjusted the pull-in schedule for all four Alum Rock-Santa Teresa trains,[8] shortening Sheehy's pull-in schedule by 5 minutes.[9] After the shift in policy, Sheehy began pulling in roughly 15 minutes late.[10] Over the next three years, Sheehy consistently

---

[2] *Espinoza v. Cnty. Of Fresno*, 290 F.R.D. 494, 501-02 (E.D. Cal. 2013) (internal citations and quotations omitted).

[3] *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 729 F. Supp. 2d 1038, 1060 (S.D. Iowa 2010).

[4] *See* Docket No. 1 at 2. Between 2010 and 2014, Sheehy's hourly pay rate was around $30. *See id.*

[5] *See id.*

[6] *See id.* A "pull-in" consists of three parts, including the "walk-through"—the operator inspects all segments of the train for personal items, the "drive-back"—the operator drives the train from the terminal station to the storage yard and the "turn-in"—the operator parks the train and turns in his operator's pouch. *See* Docket No. 29-10 at 1-2. The adjustment in July 2010 shortened only the drive-back period—the allotted time for walk-throughs and turn-ins was unchanged. *See id.* at 2-3.

[7] *See* Docket No. 29 at 3; Docket No. 29-10 at 5-7 (highlighting Sheehy's early pull-ins from February 2010 to April 2010).

[8] *See* Docket No. 1 at 3.

[9] *See id.*

[10] *See* Docket No. 29 at 4.

submitted overtime pay requests on grounds that he was "unable to pull in on time due to [the] shortened pull-in schedule."[11]

In response to these requests, VTA initially paid them but launched an investigation. Superintendent Garry Stanislaw reviewed the train reports and found that Sheehy had been intentionally leaving the terminal station late to accumulate overtime pay.[12] Supervisor Janice Broock investigated the matter independently and similarly discovered that Sheehy routinely spent up to 16 minutes at the terminal station before heading back to the yard, even though he arrived at the terminal station on time.[13] Other operators regularly operated the same route—with the same pull-in schedule—but raised no concerns.[14] Based on these facts, beginning in September 2010, Broock denied Sheehy's overtime requests.[15]

In March 2014, Sheehy filed a complaint against VTA, alleging VTA's willful violation of the FLSA by failing to pay at all or by failing to compensate for hours worked in excess of 40 hours in a work week.[16]

## II.

This court has jurisdiction under 28 U.S.C. § 1331. The parties further consent to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

---

[11] *See* Docket No. 29-4 (documenting Sheehy's overtime requests from November 2010 to March 2011); Docket No. 29-8 (documenting Sheehy's overtime requests from September 2010 to March 2013).

[12] *See* Docket No. 29 at 4.

[13] *See id.* When Superintendent John Cross asked what caused the delays, Sheehy responded that because VTA had cut about 7 minutes from his schedule he started taking a break before starting the pull-in process. *See* Docket No. 29 at 5; Docket No. 29-11 at 2-3.

[14] *See* Docket No. 21-2 at ¶ 3; Docket No. 21-6 at ¶ 8.

[15] *See* Docket No. 29-6 at ¶ 10. VTA inquired into whether Sheehy had any medical conditions that necessitated his frequent use of bathroom facilities. Sheehy failed to provide any information. *See* Docket No. 29 at 5.

[16] *See id.*

1   Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case.[17] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[18] All evidence must be viewed in the light most favorable to the non-moving party. At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[19] Initially, the moving party bears the burden to show that no genuine issue of material fact exists.[20] If this burden is met, the burden shifts to the non-moving party.[21]

## III.

Two issues lie at the core of VTA's motion: (1) whether the FLSA requires VTA to pay overtime pay and (2) whether Sheehy's claims survive the FLSA's statute of limitations. No reasonable jury could resolve either issue in Sheehy's favor.

*First*, VTA was not required to compensate Sheehy for overtime pay because the time at issue was not "an integral and indispensable part of the principal activities" of the employee under the FLSA.[22] As a part of Sheehy's daily schedule, VTA explicitly built breaks into his work schedule. Specifically, Sheehy "enjoyed regular breaks ranging from 13 to 30 minutes at routine intervals (i.e. 73 to 78 minutes apart) throughout his shift, totaling 1 hour and 37 minutes;"[23] that

---

[17] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[18] *See id.*

[19] *House v. Bell*, 547 U.S.518, 559-60 (2006).

[20] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

[21] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[22] 29 U.S.C. § 254(a)(2). *See also Steiner v. Mitchell*, 350 U.S. 247, 256 (1947).

[23] Docket No. 32 at 3. *See* Docket No. 29-6 at ¶ 13:
   Sheehy's daily schedule consisted of the following:
   - Start at 2:42 p.m. at Civic Center heading southbound to Santa Teresa.

fact is undisputed. Neither party disputes that authorized breaks over the course of the day are compensable. But an unauthorized extension of a rest break is not considered compensable as hours worked.[24]

Sheehy counters that in the absence of reprisal by VTA for taking an additional 16-minute break, VTA implicitly authorized the break. This argument is unavailing, particularly in light of written provisions of the VTA Light Rail Operating Rulebook that required Sheehy to inform the Operational Control Center if he was tardy by more than two minutes for any of his scheduled departures.[25] Sheehy never reported that he was running late on any occasion in which he left the terminal station later than 11:14 PM, thereby violating VTA policy.

When pressed by VTA for an explanation for why Sheehy needed that final restroom break at the end of each day, Sheehy never responded.[26] And he has still not offered any reasonable explanation. At best, Sheehy characterizes his tardiness as an inability "to pull in on time due to [the] shortened pull-in schedule."[27] But VTA has hard evidence—in the form of undisputed transit

---

- Arrive Santa Teresa 3:19 p.m., leave 3:36 p.m. (17 minute break at Santa Teresa).
- Arrive Alum Rock 4:50 p.m., leave 5:30 p.m. (13 minutes break at Alum Rock).
- Arrive Santa Teresa 6:19 p.m., leave 6:36 p.m. (17 minute break at Santa Teresa).
- Arrive Alum Rock 7:49 p.m., leave 8:09 p.m. (20 minute break at Alum Rock).
- Arrive Santa Teresa 9:27 p.m., leave 9:57 p.m. (30 minute break at Santa Teresa).
- Arrive Alum Rock 11:14 p.m.

[24] *See* Dep't of Labor Operations Handbook, Ch. 31, § 13a01; 29 C.F.R. § 785.18; *Armour Co. v. Wantock*, 323 U.S. 126, 133 (1944) (waiting time not predominantly for employer's benefit is not hours worked); *Mitchell v. Greinetz*, 235 F.2d 621, 623 (10th Cir. 1956) (rest break not predominantly for employer's benefit is not hours worked).

[25] *See* Docket No. 32-1 at ¶ 4.

[26] *See* Docket No. 29 at 5.

[27] *See id.* at 9. In an email documenting a conversation that Cross had with Sheehy in September 2010, Cross wrote the following to Broock:

I met with [Sheehy] and asked him what the deal is with this constant late thing. He arrived as [Alum Rock] at 2317hrs. The bottom line is that he takes a 10-7B at [Alum Rock] before pulling in. The additional time delays his departure and subsequent arrival at [the train yard].

He stated he used to pull right in without a 10-7B and would arrive a bit early at the yard. Recently however, he states they cut about 7 minutes off his pull in time, as a result, he now takes a 10-7b before pulling in. He departed [Alum Rock] at 2329hrs and called for an off line time at 2358hrs.

5
Case No. 5:14-01325-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

reports—that show that Sheehy consistently arrived on time at the terminal station but paused for up to 16 minutes before returning to the train to the yard.[28] Ultimately, Sheehy offers no explanation for this additional break, instead blaming the delay on the drive back to the yard.[29]

Sheehy also contends that he was entitled to take a 10-7B break[30] at the end of his route to use the bathroom. And although VTA explicitly scheduled each and every break he was entitled to take, VTA does not necessarily even argue that Sheehy could not take that last break. Rather, it is VTA's position that VTA does not have to provide overtime pay to Sheehy for that extra break—in light of the 97 minutes of paid breaks already built into Sheehy's schedule—and any reasonable jury would agree.

At the end of the day, if this issue were put before a jury, the jury would learn that before July 2010, Sheehy routinely pulled in early 37 out of 37 times, with an average driving time of 32 minutes from the terminal station to the storage yard;[31] that the route from the terminal station to the storage yard remained unchanged; that after July 2010 Sheehy consistently arrived at the terminal station on time; that soon thereafter Sheehy began to take an additional 16-minute break—on top of the 97 minutes of break time already allotted during the workday—after reaching the terminal station and before heading back to the train yard; that Sheehy has offered no explanation justifying this additional, unauthorized break; and that Sheehy pulled in late solely as a result of this unauthorized break. Faced with these facts, no reasonable jury could find that Sheehy was entitled to overtime pay for his end-of-route break.

---

*See* Docket No. 29-11 at Exh. A.

[28] *See id.*

[29] *See* Docket No. 31 at 8-11.

[30] Despite diligent efforts, the court is unable to determine what a 10-7B break is beyond a personal break or a bathroom break. Because neither side has produced evidence explaining any rules governing a 10-7B, the court will treat it as any standard break.

[31] *See* Docket No. 29 at 8; Docket No. 32 at 4.

*Second*, Sheehy's overtime claim for benefits predating March 2012 is time-barred by the FLSA's two-year statute of limitations.[32] An FLSA overtime claim starts running at the end of each pay period during which the employer fails to compensate the plaintiff his alleged overtime pay.[33] If an employee can prove that the employer's conduct was willful, the statute of limitations is extended to three years.[34] "A violation is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"[35] There is no evidence that VTA was willful in denying Sheehy's overtime requests. In fact, the only evidence in the record is that VTA's superintendents Stanislaw, Cross and Broock—as well as VTA's Risk Management Division—all gave Sheehy the benefit of the doubt and waited for corroborating evidence before making a final determination.[36]

The best Sheehy can do is point to Broock's deposition testimony—where she admits that the denials of overtime were willful[37]—as dispositive evidence that VTA's conduct was willful

---

[32] The Ninth Circuit considers the determination of which statute of limitations applies under the FLSA a mixed question of law and fact. District courts treat the specific issue of willfulness as a question of fact. The parties seem to do the same, and so this court will follow suit. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003) ("If a particular employer's conduct embodies willful violation of FLSA, 29 U.S.C. § 255(a) permits extension of the FLSA's standard two-year statute of limitations to a three-year period. The determination of willfulness is a mixed question of law and fact." (internal quotations and citations omitted)); *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1058-59 (D. Or. 2010) ("The determination of willfulness [under the FLSA] is within the province of the trier of fact. However, whether the statute of limitations has run on a plaintiff's claim is a purely legal issue."); *Abbe v. City of San Diego*, Case Nos. 05-cv-01629, 06-cv-00538, 2007 WL 4146696, at *17 (S.D. Cal. Nov. 9, 2007) (finding that a determination about whether the two or three-year statutory period under the FLSA applies is a question of fact).

[33] *See* 29 U.S.C. § 255(a).

[34] *See id.*

[35] *Chao v. A-1 Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

[36] *See* Docket No. 29 at 12-13.

[37] *See* Docket No. 31-3 at 25:21-25:
   Q. And VTA knew, from his extra pay request, that he was requesting overtime.
   A. That's correct.
   Q. And VTA willfully chose not to pay it; correct?
   A. Correct.

7
Case No. 5:14-01325-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

such to expand the statute of limitations under the FLSA. But this argument ultimately fails. Broock merely affirmed that VTA willfully chose not to pay out Sheehy's overtime request, not that VTA willfully violated the FLSA. Put another way, simply because she admitted to the willful denial of Sheehy's overtime claim does mean that she invoked the legal definition of willful, which requires knowledge of or a reckless disregard for the fact that the denial was in violation of the FLSA.[38]

**SO ORDERED.**

Dated: February 13, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[38] *See Baker v. D.A.R.A. II, Inc.*, Case No. 06-cv-02887, 2008 WL 191995, at *6 (D. Ariz. Jan. 22, 2008) (finding that a layperson plaintiff "was likely unaware of the legal definition of the term "willful" as used in the FLSA and her deposition testimony should not be construed as a legal opinion which she was not qualified to give . . . [and is] not binding for purposes of . . . summary judgment.").

VTA also argues that even if Sheehy were allowed overtime pay, VTA may offset the amount paid for bona fide meal periods against the owed overtime. *See* 29 C.F.R. § 785.19; Docket No. 29 at 11. When a meal break that is not compensable time under the FLSA has been paid for, the employer may offset the amount paid against any amount it owes plaintiff. *See Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1344 (11th Cir. 1994). Sheehy counters that the meal breaks are not bona fide meal periods because the periods were either less than 30 minutes in duration or were not exclusively provided for the purpose of eating. *See* Docket No. 31 at 12. Because the court has already determined that Sheehy is not entitled to overtime pay, the court does not reach this issue.